1   Edwin Aiwazian (Cal. State Bar No. 232943)
        *edwin@lfjpc.com*
2   Arby Aiwazian (Cal. State Bar No. 269827)
        *arby@lfjpc.com*
3   Jill J. Parker (Cal. State Bar No. 274230)
        *jill@lfjpc.com*
4   **LAWYERS *for* JUSTICE, PC**
    410 West Arden Avenue, Suite 203
5   Glendale, California 91203
    Telephone:   (818) 265-1020
6   Facsimile:    (818) 265-1021

7   *Attorneys for* Plaintiff

8

9

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| CHARLES SCOTT, individually, and on behalf of other members of the general public similarly situated; | Case No.:  5:17-cv-01147-JGB-KK |
| | Honorable Jesus G. Bernal |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| KUEHNE + NAGEL, INC., an unknown business entity; and DOES 1 through 100, inclusive, | |
| Defendants. | Date:          July 24, 2017 |
| | Time:          9:00 a.m. |
| | Courtroom:    1 |
| | Complaint Filed:   April 21, 2017 |
| | Trial Date:          None Set |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **July 24, 2017** at **9:00 a.m.**, or as soon thereafter as may be heard in Courtroom 1 of the United States Courthouse, located at 3470 Twelfth Street, Riverside, California 92501, Plaintiff Charles Scott ("Plaintiff") will and hereby does move for an order remanding this action to the Superior Court for the County of San Bernardino.

Plaintiff moves for remand pursuant to 28 U.S.C. § 1447 on the ground that this Court does not have removal jurisdiction over this case. Defendant Kuehne + Nagel, Inc. ("Defendant") did not meet its burden to prove by a preponderance of the evidence that the total amount in controversy exceeds the sum of $5,000,000 as required for jurisdiction under the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d). As a result, Plaintiff seeks remand to the Superior Court for the County of San Bernardino.

This motion is made following counsel for Plaintiff meeting and conferring with counsel for Defendant pursuant to Local Rule 7-3, which took place on June 14, 2017.

Plaintiff's Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Jill J. Parker, any documents Plaintiff may subsequently file, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

Dated: June 26, 2017                    **LAWYERS** *for* **JUSTICE, PC**


By: /s/ Jill J. Parker _____
                Jill J. Parker
                *Attorneys for* Plaintiff

1

# **TABLE OF CONTENTS**

2  I.    INTRODUCTION...................................................................................1

3
4  II.   STATEMENT OF FACTS ....................................................................2

5  III.  LEGAL STANDARD.............................................................................2

6
7  IV.   ARGUMENT ..........................................................................................4

8       A.    Defendant Fails to Prove By a Preponderance of the Evidence that
9             the Amount in Controversy Exceeds $5 Million ............................4

10            1.    Plaintiff Does Not Seek Waiting Time Penalties..................4

11            2.    Defendant's Methodology for Calculating Unpaid Overtime and
                    Meal and Rest Periods is Irredeemably Flawed....................5

12            3.    Defendant Provides No Support for Assuming a 20% Violation
13                  Rate for Unpaid Overtime and Unpaid Meal and Rest Break
                    Premiums...............................................................................8

14            4.    Defendant's Attorneys' Fee Estimate Must Also be Rejected............11

15  V.    CONCLUSION .....................................................................................12

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460 (C.D. Cal., Oct. 25, 2016) ...................................................................................................................... 8, 10

4

5

*Beck v. St.-Gobain Containers*, 2016 U.S. Dist. LEXIS 124285 (C.D. Cal. Sep. 12, 2016) ........................................................................................................................... 9

6

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) ............................................................................................................................ 4

7

8

*Chen. United Talent Agency, LLC*, 2017 U.S. Dist. LEXIS 34960 (C.D. Cal., Mar. 10, 2017) .......................................................................................................................... 12

9

*Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F.Supp. 1196 (N.D. Cal. 1998) ............................................................................................................................ 4

10

11

*Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014) ................... 3

*Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir. 1996) ........................................................... 3

12

*Ellis v. Pac. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 16045 (C.D. Cal. Feb. 10, 2011) ...... 3

13

*Foltz v. Integon Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 141488 (E.D. Cal. Oct. 2, 2014) ........................................................................................................................... 12

14

15

*Gallegos v. Comerica*, 2011 U.S. Dist. LEXIS 82735  (C.D. Cal. Jul. 27, 2011) .......... 11

16

*Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193 (9th Cir. 2015) ............................... 3, 4, 10

17

*Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260 (C.D. Cal. Apr. 19, 2000) ......... 4

18

*Nolan v. Kayo Oil Co.*, 2011 U.S Dist. LEXIS 72256 (N.D. Cal. Jul. 6, 2011) ............... 9

19

*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389 (2010) ............................................ 5

20

*Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657 (C.D. Cal. 2011) ..................... 9

21

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d 975 (9th Cir. 2013) ........................ 3

22

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996) .............................. 3

23

*Scalzo v. Allied Property and Casualty Insurance Co.*, 2011 U.S. Dist. LEXIS 75721 (E.D. Cal. Jul. 11, 2011) ............................................................................................ 11

24

*Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373 (9th Cir. 1997) ........................ 3

25

*Wastier v. Schwan's Consumer Brands*, 2007 U.S. Dist. LEXIS 89441 (S.D. Cal. Dec. 5, 2007) ..................................................................................................................... 12

26

*Weston v. Helmerich & Payne International Drilling Co.*, 2013 U.S. Dist. LEXIS 132930 (E.D. Cal. Sep. 16, 2013) ................................................................................ 7

27

28

ii

**Statutes**

28 U.S.C. § 1441 ........................................................................................................2

Cal. Bus. & Prof. Code § 17200 ................................................................................2

Cal. Bus. & Prof. Code § 17203 ................................................................................5

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Kuehne + Nagel, Inc.'s ("Defendant") notice of removal fails to establish that the amount in controversy requirement for jurisdiction under the Class Action Fairness Act ("CAFA") is satisfied.   Egregiously, **Defendant calculates penalties not even sought in Plaintiff's complaint** – and which are not even recoverable under the Unfair Competition Law ("UCL") – all in order to inflate the amount in controversy in its attempt at forum shopping.

Additionally, Defendant's methodology of calculating amounts in controversy for unpaid overtime wages and meal and rest period penalties is fundamentally flawed, as **Defendant does not even provide the number of workweeks** actually worked by class members in order to make its calculations.   Instead, Defendant asserts that every single class member worked "1005 days" during the proposed class period.   But Defendant provides no explanation as to how it arrived at this figure, and its declarant, David Beegle, offers no testimony on the topic.   As a result, the number appears pulled from thin air, and clearly doesn't amount to summary judgment type evidence.   Additionally, **Defendant does not provide a consistent calculation of the number of putative class members** – it asserts that the class totals 858 California employees, yet it inexplicably makes calculations on behalf of 882 individuals.

Further, Defendant's proposed violation rates are based entirely upon self-serving assumptions that lack adequate evidentiary support and are tantamount to impermissible speculation.   Defendant, as the employer, should have access to the data that could be used to calculate actual violation rates for Plaintiff Charles Scott ("Plaintiff") and the putative class members.   Rather than provide this data, Defendant asks the Court to take its guesses about the number of unpaid overtime hours and unpaid meal and rest period premiums as sufficient to confer federal jurisdiction.   It is precisely this type of conjecture about violation rates that the Ninth Circuit has held to be insufficient to establish the amount in controversy.   As a result,

1  Defendant has failed to meet its burden, and Plaintiff respectfully requests that this
2  Court remand this case to the Superior Court for the County of San Bernardino.

3  **II.  STATEMENT OF FACTS**

4  Plaintiff filed this action on April 21, 2017 in the Superior Court for the County
5  of San Bernardino.  Plaintiff's Complaint contains one cause of action for violation of
6  California Business & Professions Code § 17200, et seq.

7  The Complaint defines the proposed class as:

8  All current and former hourly-paid or non-exempt individuals employed by
9  any of the Defendants within the State of California at any time during the
10  period from four years preceding the filing of this Complaint to final
11  judgment.

12  (Dkt. No. 1-1, Complaint, ¶ 13).

13  On June 12, 2017, Defendant filed its notice of removal.  (Dkt. No. 1).  On June
14  14, 2017, Plaintiff's counsel sent a meet and confer letter to Defendant's counsel
15  regarding Defendant's amount in controversy calculations.  (Parker Decl., Exh. A).
16  Plaintiff's counsel explained that they believed Defendant failed to establish the
17  amount in controversy by a preponderance of the evidence.   Plaintiff invited
18  Defendant to apprise them of their availability to discuss the matter further, and
19  requested that Defendant inform them by the close of business on June 21, 2017 as to
20  whether Defendant would agree to withdraw its notice of removal.  Plaintiff's counsel
21  sent a follow-up e-mail to Defendant's counsel on June 21, 2017.  (Parker Decl., Exh.
22  B).   On June 23, 2017, Defendant's counsel apprised Plaintiff's counsel that
23  Defendant would not agree to remand this action to state court.  (Parker Decl. ¶ 4).
24  As a result, this motion to remand was necessary.

25  **III. LEGAL STANDARD**

26  A federal court may exercise removal jurisdiction over a case only if
27  jurisdiction existed over the suit as originally brought by the plaintiffs.  28 U.S.C. §
28  1441.  "Federal jurisdiction must be rejected if there is any doubt as to the right of

2

1  removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992);

2  *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (same).

3        Defendant, as the removing party, bears the burden to prove by a

4  preponderance of the evidence that removal jurisdiction exists.  *Abrego Abrego v.*

5  *Dow Chem. Co.* 443 F.3d 676, 685 (9th Cir. 2006).  Evidence establishing the amount

6  in controversy is required where, as here, Defendant's assertion of the amount in

7  controversy is contested by Plaintiff.  *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193,

8  1197 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135

9  S. Ct. 547, 554 (2014)).  Defendant bears the burden of proving the propriety of

10  federal court jurisdiction by "a preponderance of the evidence." *Rodriguez v. AT&T*

11  *Mobility Servs. LLC*, 728 F. 3d 975, 977 (9th Cir. 2013).  Under this burden, a

12  defendant must provide evidence establishing that it is 'more likely than not' that the

13  amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*,

14  102 F.3d 398, 404 (9th Cir. 1996).  In a removal jurisdictional dispute, the defendant

15  has not only "the burden to put forward evidence showing that the amount in

16  controversy exceeds $5 million," but also the burden "to persuade the court that the

17  estimate of damages in controversy is a reasonable one." *Ibarra.,* 775 F.3d at 1197.

18  Thus, a removing party "cannot establish removal jurisdiction by mere speculation

19  and conjecture, with unreasonable assumptions." *Id.*

20       In attempting to satisfy its burden, Defendant must offer nothing less than

21  competent evidence.  *Gaus,* 980 F.2d at 567.  In order to demonstrate the requisite

22  amount in controversy, parties may submit "summary-judgment-type evidence"

23  relevant to the amount in controversy at the time of removal." *Singer v. State Farm*

24  *Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997).   A defendant "may rely on

25  calculations to satisfy [its] burden so long as [its] calculations are good faith, reliable

26  estimates based on the pleadings and other evidence in the record." *Ellis v. Pac. Bell*

27  *Tel. Co.*, 2011 U.S. Dist. LEXIS 16045, *5 (C.D. Cal. Feb. 10, 2011).  It is well-settled

28  in the Ninth Circuit that "[a] speculative argument regarding the potential value of the

[amount in controversy] is insufficient." *Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260, *3 (C.D. Cal. Apr. 19, 2000) (quoting *Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. Feb. 10, 1998)); *see also Ibarra,* 775 F.3d at 1197 (A defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.")

## IV. ARGUMENT

### A. <u>Defendant Fails to Prove By a Preponderance of the Evidence that the Amount in Controversy Exceeds $5 Million</u>

#### 1. *Plaintiff Does Not Seek Waiting Time Penalties*

Defendant calculates that there is $1,150,530 in controversy for waiting time penalties.  (Dkt. No. 2, ¶ 42).  **Nowhere in the Complaint – including the Prayer – does Plaintiff state that he is seeking waiting time penalties.**  Rather, Defendant's violation of Labor Code sections 201 and 202 gives rise to Plaintiff's claim that Defendant's conduct was unlawful and unfair and therefore in violation of the UCL. Plaintiff only refers to these Labor Code sections for the purpose of establishing his UCL cause of action, not in order to obtain a judgment awarding penalties.  Indeed, no reference is even made in the Complaint to Labor Code section 203 – which is the provision authorizing waiting time penalties.

"By proscribing 'any unlawful' business practice, 'section 17200 'borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  The UCL "provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" *Rose v. Bank of America, N.A.*, 57 Cal. 4th 390, 397 (2013).  Thus, the alleged violations of Labor Code sections 201 and 202 are properly pleaded as a predicate act constituting unfair and unlawful practices under the UCL.

Furthermore, waiting time penalties are not even recoverable under the UCL.

4

Section 17203 of the California Business and Professions Code provides that "[t]he court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." As a result, remedies under the UCL are " 'generally limited to injunctive relief and restitution." *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010). In *Pineda v. Bank of America*, the California Supreme Court explained that waiting time penalties are not restitutionary in nature, because they are intended to punish employers who fail to timely pay wages. *Id.* at 1402. Unlike unpaid wages, in which employees have a vested interest, "[u]ntil awarded by a relevant body, employees have no comparable vested interest in *section 203* penalties." *Id.* at 1402. The Court therefore held that "*section 203* penalties cannot be recovered as restitution under the UCL." *Id.*

Thus, not only does Plaintiff not seek waiting time penalties in his Complaint, but they are not even recoverable under his single cause of action for violation of the UCL.

### 2. *Defendant's Methodology for Calculating Unpaid Overtime and Meal and Rest Periods is Irredeemably Flawed*

The methodology Defendant uses for calculating the amounts in controversy for unpaid overtime and unpaid meal and rest periods is unsound. Defendant's removal notice states that, during the relevant time period, "the Proposed Class members worked the equivalent of 1005 work days." (Dkt. No. 2, ¶ 31). Defendant uses this 1,005 figure as a basis for its overtime, meal, and rest period calculations. Although Defendant does not explicitly state as much, it appears that Defendant is representing that each putative class member worked 1,005 days during the putative class period.[1]

---

[1] The only alternative interpretation is that all 882 putative class members collectively worked 1,005 days.

It is also unclear what "equivalent" means in this context.  Through the use of such imprecise language, one can only conclude that the putative class members did not actually work 1,005 days and that this is some sort of estimate.

Indeed, Defendant did not provide any evidence establishing that all of the putative class members actually worked 1,005 days during the class period.  The declaration of David Beegle makes no mention of 1,005 work days. (Dkt. No. 5).  As a result, there is simply zero evidence that this is an accurate number and Defendant's calculations of unpaid overtime and meal and rest period premiums are unreliable.

On top of the fact that this 1,005 figure appears from nowhere, Defendant makes improper use of this figure in its calculation of violation rates.  Defendant assumes a violation rate of 20% for unpaid overtime and missed meal and rest breaks.  But rather than looking at the number of actual workweeks worked, Defendant calculates 20% of 1,005 days, which is 201 days. (Dkt. No. 2, ¶ 31).  Defendant then multiplies 201 days by the number of class members, which is then multiplied by the purported average rate of overtime pay. (DKt. No. 2, ¶ 32).  Defendant has two sets of calculations for each of these three claims, as it asserts that 639 employees were paid on a weekly basis, and 243 employees were paid on a semi-monthly basis at a higher rate of pay.  Thus, Defendant's calculations are as follows:

*Unpaid Overtime:*

$21 OT rate × 1 hr × 201 days × 639 ee's = $2,697,219.00

$35 OT rate × 1 hr × 201 days × 243 ee's = $1,709,505.00

*Meal Period Violations:*

$13.65 × 1 missed meal × 201 days × 639 ee's = $1,753,193.00

$22.95 × 1 missed meal × 201 days × 243 ee's = $1,120,947.00

*Rest Period Violations:*

$13.65 × 1 missed rest × 201 days × 639 ee's = $1,753,193.00

$22.95 × 1 missed rest × 201 days × 243 ee's = $1,120,947.00

The problem with Defendant's calculations is that they presume without any

6

1   evidentiary support that 1) all putative class members worked 201 days and 2) that 201
2   days constitutes exactly 20% of the workdays that each class member worked during
3   the putative class period.

4          In addition to using an unsupported and unexplained number of workdays,
5   Defendant fails to explain how it calculated the "average hourly rate" for its weekly
6   and semi-monthly paid employees.  Mr. Beegle states that the "average hourly rate" for
7   weekly paid class members is "*approximately* $13.65" and that the "average hourly
8   rate" for semi-monthly class members is "*approximately* $22.95."  (Dkt. No. 5, ¶ 8)
9   (emphasis added).  Mr. Beegle does not explain who made these calculations, nor how
10  they were made.  He does not explain whether he used a simple average or a weighted
11  average, and why.  *See Weston v. Helmerich & Payne International Drilling Co.*, 2013
12  WL 5274283, 2013 U.S. Dist. LEXIS 132930, *16 (E.D. Cal. Sep. 16, 2013) (in
13  rejecting averages provided by employer's declarant, court concluded "that using an
14  average merely ensures that the calculations are inaccurate for virtually every
15  employee.  It is unclear why the actual figures could not have been used and damage
16  estimates still achieved expeditiously….").

17         There is good reason to doubt Defendant's unexplained and unsupported
18  calculations.  In paragraph 9 of Mr. Beegle's declaration, he states "[i]n the *three years*
19  beginning on April 21, 2013 through the filing of the complaint, there were at least 236
20  weekly paid employees…."  (Dkt. No. 5, ¶ 9) (emphasis added).  However, from April
21  21, 2013 through the filing of the complaint – April 21, 2017 – there is a total of four
22  years.  In paragraphs 5 and 7 of his declaration, Mr. Beegle states that there are 858
23  putative class members.  (Dkt. No. 5, ¶¶ 5-7).  Mr. Beegle goes on to state that "[o]f
24  the 858 California Employees, approximately 639 received weekly wage payments,
25  approximately 243 received semi-monthly wage payments, and approximately 35
26  received both weekly and semi-monthly wage payments during the Period."  (Dkt. No.
27  5, ¶ 7).  These numbers do not add up: 639 + 243 + 35 = 917 employees.  Even if one
28  assumed that the 35 who received both weekly and semi-monthly wage payments were

7

already accounted for in the 639 weekly paid employees and 243 semi-monthly paid employees, this sum does not add up to 858 either:  639 + 243 = 882.  **Thus, despite asserting that there were 858 putative class members, Defendant's calculations of unpaid overtime and missed meal and rest periods are made on behalf of 882 individuals.**  (Dkt. No. 2, ¶¶ 30-33, 34-37).

What other mistakes and erroneous assumptions did Defendant make?  Without the underlying records and declaration testimony supported by adequate foundation and personal knowledge, it is impossible to ascertain. The evidence that Defendant could provide, but chose not to, is the kind of information available to Defendant through payroll records which Defendant is statutorily required to maintain. Nevertheless, Defendant provided none of this information, which leaves Plaintiff and the Court to take Defendant's word and presume that all data created, relied upon, and vaguely referred to is complete and accurate.  This is disconcerting, especially in light of Defendant's mathematical errors and the fact that Plaintiff's Complaint alleges that Defendant failed to properly maintain payroll records in violation of California Labor Code Section 1174(d).

> ### 3.  *Defendant Provides No Support for Assuming a 20% Violation Rate for Unpaid Overtime and Unpaid Meal and Rest Break Premiums*

Defendant assumes that on 20% of all days worked by putative class members, they were not paid for one hour of overtime work.  Defendant further assumes that on 20% of all days worked by putative class members, they were not provided with either a meal or rest period.  Defendant provides no reasonable basis for assuming a 20% violation rate.  For example, Defendant does not explain how the nature of the class members' work duties would make a 20% violation rate a reasonable assumption.  Nor does Defendant cite any documentary evidence – such as a company handbook, work schedules, time cards, or complaints from an employee hotline – to establish the propriety of its estimates.  *See Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, *8-9 (C.D. Cal., Oct. 25, 2016) (declaration from human resources

8

partner did not "address the possible rate of meal- and rest-period violations, the number of complaints Defendant received regarding the lack of meal and rest periods, Defendant's policy addressing how meal and rest periods are scheduled, or anything else to provide support for Defendant's assumption of 'one meal and rest period violation per workweek' for every class member.")

Courts in similar circumstances have found that even a one hour estimate of unpaid overtime per week was too speculative when not supported by any evidence. *See e.g.*, *Beck v. St.-Gobain Containers*, 2016 U.S. Dist. LEXIS 124285, *32 (C.D. Cal. Sep. 12, 2016) (rejecting one hour of overtime per week estimate where defendant provided no summary-judgment type evidence to support it); *Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657, at *8 (C.D. Cal. Dec. 9, 2011) (in applying preponderance standard, allegation that defendant "failed to pay 'all' California hourly employees at least some regular and overtime hours' did not support defendant's estimate that each class member missed one hour of regular pay and one hour of overtime pay per pay period); *Nolan v. Kayo Oil Co*., 2011 U.S Dist. LEXIS 72256, at *12 (N.D. Cal. Jul. 6, 2011) ("Simply assuming that every employee…worked at least one hour of overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden [by a preponderance of the evidence].").  Here too, Defendant's unpaid overtime estimate is far too speculative to rise to the level of summary judgment type evidence.

Like Defendant's overtime calculations, Defendant's calculation of the amount in controversy for meal and rest break premiums is not supported by any evidence. Defendant fails to even lay foundation that all of the shifts the class members worked were of sufficient length to mandate the provision of meal and rest periods.

The unreasonableness of Defendant's assumptions in its amount in controversy calculations is evident in light of *Ibarra*.  There, the plaintiffs alleged that the defendant engaged in a "pattern and practice of failing to pay" non-exempt employees for working off-the-clock and therefore sought to recover premium pay for missed

9

meal and rest breaks for putative class members. *Ibarra,* 775 F.3d at 1198. In estimating the amount in controversy, the defendant assumed "that each class member missed one meal break in a 5-hour shift and that each class member missed one rest break in a 3.5-hour shift." *Id.* While the Court noted that the defendant relied on the declaration of its senior director of employee services and administration to support its assumption about the number of employees, the Court found that the defendant's assumption that meal and rest break violations occurred on every meal break eligible and rest break eligible shift was not a reasonable assumption. *Id.* at 1199. The Court reasoned that, while "a damages assessment may require a chain of reasoning that includes assumptions, […] those assumptions ***cannot be pulled from thin air*** but need some reasonable ground underlying them." *Id.* (emphasis added). The Court highlighted the fact that "[t]he complaint alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Id.* The Court articulated that a "'pattern and practice' of doing something does not necessarily mean *always* doing something." *Id.* at 1198-99 (emphasis in original).

Likewise, Defendant's assumption that meal and rest break violations occurred 20% of the time is an unreasonable assumption because it is not based on any evidence or allegation in the Complaint. While Plaintiff alleges a "uniform policy and systematic scheme of wage abuse," there is no allegation or indication that meal and rest break violations occurred at this rate. (Dkt. No. 1-1, Complaint, ¶ 25). Thus, Defendant's representations as to the amounts in controversy for meal and rest break premium pay are pure speculation.

Courts have rejected estimates similar to Defendant's. For example, in *Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, *7-8 (C.D. Cal., Oct. 25, 2016), the Court explained:

> The allegation "Defendant failed to provide all the legally required. . . meal [and rest] periods" could also mean: (1) Defendant denied one class

member one meal and rest break once per year, (2) Defendant denied a small group of class members one meal and rest period once a month, or (3) Defendant denied half the class members all meal and rest periods every week. In each of these scenarios, Defendant "failed to provide all the legally required. . . meal [and rest] periods."  Hence, there is no logical basis for the Court to assume Plaintiff means "Defendant filed to provide [each and every] legally required unpaid, of-duty meal [and rest] period [to every class member,]' as Defendant contends."

Here too, the Court should reject Defendant's estimates of the amount in controversy for missed meal and rest breaks because they are unsupported by the allegations in the Complaint and because Defendant has failed to introduce summary judgment type evidence supporting them.

### 4.  Defendant's Attorneys' Fee Estimate Must Also be Rejected

Defendant asserts that there is $2,826,384 in controversy for attorneys' fees, and bases this estimate on 25% of the amount it calculated as being in controversy for unpaid overtime, waiting time penalties, meal period premiums, and rest period premiums.  (Dkt. No. 2, ¶ 46).  As a preliminary matter, courts are divided as to whether attorneys' fees that have not yet been incurred may be included in the amount in controversy.  *Gallegos v. Comerica*, 2011 U.S. Dist. LEXIS 82735, *45-46 (C.D. Cal. Jul. 27, 2011) (collecting cases); *see also Scalzo v. Allied Property and Casualty Insurance Co.*, 2011 WL 2709001, 2011 U.S. Dist. LEXIS 75721, *10 (E.D. Cal. Jul. 11, 2011) ("Defendant's prediction that an award of attorney fees could be significant is too vague to establish subject matter jurisdiction"); *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. Feb. 10, 1998) ("Defendant's contention that attorney fees are likely to total at least $20,000 is too speculative to support its burden of establishing jurisdiction by a preponderance of the evidence.")

"Unlike prospective attorneys' fees, future damages such as lost income relate

back to the original injury or harm.  In contrast, attorney's fees are in the control of the client and counsel and may be avoided or accrue over years depending on legal strategy."  *Foltz v. Integon Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 141488, *8 (E.D. Cal. Oct. 2, 2014) (citation omitted); *see also Wastier v. Schwan's Consumer Brands*, 2007 U.S. Dist. LEXIS 89441, at *9 (S.D. Cal. Dec. 5, 2007) ("Defendants' estimate of Plaintiffs' fees for activities anticipated but not yet performed, even if accurate, may be irrelevant."); *Chen. United Talent Agency, LLC*, 2017 U.S. Dist. LEXIS 34960, * 7 (C.D. Cal., Mar. 10, 2017) ("Defendant's reliance on anticipated attorneys' fees is insufficient to satisfy its burden to show that the amount in controversy exceeds the jurisdictional minimum."  Therefore, Defendant's estimate of attorneys' fees that have not yet accrued is improper.

Moreover, as Defendant's attorneys' fees estimate is based on Defendant's amount in controversy calculations, it is unreliable because these calculations are based on impermissible speculation and conjecture and on penalties that Plaintiff does not seek.  As a result, Defendant's estimate of attorneys' fees must also be rejected.

## V.  CONCLUSION

As Defendant has failed to support its removal calculations with competent, summary judgment type evidence, Plaintiff respectfully requests that this Court remand this case to the San Bernardino Superior Court.

Dated:  June 26, 2017                    **LAWYERS *for* JUSTICE, PC**


By: /s/ Jill J. Parker _____
    Jill J. Parker
    *Attorneys for* Plaintiff

12

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF