| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-1147 JGB (KKx)** | Date | August 11, 2017 |
| Title | *Charles Scott v. Kuehne + Nagel Inc., et al.* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) GRANTING Plaintiff Charles Scott's Motion to Remand Pursuant to 28 U.S.C. § 1447 (Dkt. No. 12); (2) REMANDING this action to the Superior Court for San Bernardino County; (3) DENYING Plaintiff Charles Scott's Motion to Strike Portion of Defendant's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint as MOOT (Dkt. No. 23); and VACATING the hearing on August 14, 2017 (IN CHAMBERS)**

Before the Court are two motions by Plaintiff Charles Scott: (1) Motion to Remand Pursuant to 28 U.S.C. § 1447, (Dkt. No. 12); and (2) Motion to Strike Portions of Defendant's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint, (Dkt. No. 23). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of the motions, the Court GRANTS the Motion to Remand and DENIES the Motion to Strike as MOOT.

## I. BACKGROUND

Defendant Kuehne + Nagel, Inc. ("Defendant") employed Plaintiff Charles Scott ("Plaintiff") and others as hourly-paid, non-exempt employees from approximately April 2010 to approximately August 2013. ("Complaint," Dkt. No. 1-1 ¶¶ 17-18.) During that time, Plaintiff alleges Defendant "engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees . . . ." (Id. ¶ 25.) Plaintiff claims Defendant's wage abuse scheme involved failure to pay employees for all hours worked and missed meal and rest periods, among other things. (Id.) Plaintiff maintains Defendant knew or should have known the

he and the putative class were entitled to, and not receiving, appropriate compensation. (Id. ¶¶ 26-32, 35-36.)

On April 21, 2017, Plaintiff filed a putative class action complaint ("Complaint") against Defendant, as well as Does 1 through 100, in the Superior Court for San Bernardino County. (Id. at 1.) Plaintiff brings the action on behalf of himself, and a putative class of similarly situated individuals, defined as follows: "All current and former hourly-paid or non-exempt individuals employed by any of the Defendant[] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Id. ¶ 13.) Plaintiff alleges a single cause of action for violation of California Business & Professions Code §§ 17200, et seq. based on Defendant's alleged failure to provide Plaintiff and the putative class with timely compensation during employment, overtime compensation, meal and rest periods, minimum wages, wages upon termination, accurate wage statements, and reimbursement for necessary business expenses. (Id. ¶¶ 47-63.) Defendant removed the action to this Court on June 12, 2017, pursuant to the Class Action Fairness act ("CAFA"). ("Amended Notice of Removal," Dkt. No. 2 ¶¶ 5-7.)

On June 26, 2017, Plaintiff filed the instant Motion to Remand. ("MTR," Dkt. No. 12.) The matter was continued twice—first by stipulation and then by an ex parte application. (See Dkt. Nos. 13-14, 16, 18, 22.) Defendant opposed the MTR, ("Opposition," Dkt. No. 19), and filed a Request for Judicial Notice ("RJN") on July 10, 2017.[1] ("RJN," Dkt. No. 20.) On July 24, 2017, Defendant filed declarations by David Beegle and Michele Wolfe to supplement its Opposition. ("Beegle Decl. #2," Dkt. No. 26; "Wolfe Decl.," Dkt. No. 25.) Plaintiff filed his reply memorandum on July 31, 2017. ("Reply," Dkt. No. 28.)

Plaintiff then filed a Motion to Strike Portions of Defendant's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint on July 14, 2017. (Dkt. No. 23.) Defendant filed an Amended Answer to Complaint on July 24, 2017. (Dkt. No. 24.)

//

---

[1] Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, Defendant requests the Court take judicial notice of the number of work days during the class period. Plaintiff does not oppose. Because the number of days that are not a weekend or public holiday can be determined by reliance on sources whose accuracy cannot be questioned, the Court takes judicial notice of this fact for purposes of the MTR.

## II.  MOTION TO REMAND

### A.  Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute."  Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013).  CAFA vests federal courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and an amount in controversy that exceeds $5,000,000.  28 U.S.C. § 1332(d).

Generally, courts must "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "However, 'no anti-removal presumption attends cases invoking CAFA . . . .'"  Garcia v. Wal-Mart Stores, Inc., No. CV 16-01645-BRO (RAO), 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)).  Instead, Congress intended CAFA to be interpreted expansively.  Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal.  28 U.S.C § 1446(a).  To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices."  Serrano v. 180 Connect, Inc., 478 F.3d 1018,1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000."  Garcia 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197).  A removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  Dart, 135 S. Ct. at 553.  Where a plaintiff questions the amount in controversy asserted, further evidence establishing that the amount alleged meets the jurisdictional minimum is required.  Id. at 554.  "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id. at 554.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)).  "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  Id. at 1198.

//

B.  Summary of Argument

Plaintiff moves to remand this action to state court on the ground that Defendant has failed to prove that the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA.[2]  (See generally MTR.)

In the Amended Notice of Removal ("NOR"), Defendant alleges the amount in controversy requirement under CAFA is satisfied because Plaintiff alleges damages which, if sustained, exceed the $5,000,000 jurisdictional threshold amount.  (NOR ¶ 20.)  Defendant's estimate of the amount in controversy is based on Plaintiff's claims that it failed to pay him and the putative class overtime wages for all hours worked and provide uninterrupted meal and rest periods, as well as waiting time penalties and attorneys' fees.  (Id. ¶¶ 23-47.)  For purposes of calculating its estimate, Defendant approximates the size of the putative class to be comprised of 858 hourly paid, non-exempt current and former employees: 639 weekly paid employees whom earned an average hourly rate of $13.65, 243 semi-monthly paid employees of whom earned an average hourly rate of $22.95, and 35 employees that received pay in both forms while employed by Defendant.  (Id. ¶ 30; Beegle Decl. #1 ¶¶ 5, 8.)  Defendant represents these employees worked the equivalent of 1,005 days during the proposed class period, (NOR ¶ 31), assume a 20% violation rate for the overtime portion of Plaintiffs' unpaid wage and missed meal and rest period claims, (id. ¶¶ 21-28), and use the established benchmark—25% of the common fund—to approximate attorneys' fees.  (Id. ¶¶ 45-46.)  Based on the above, Defendant concludes the total amount in controversy is $14,131,980.  (Id. ¶ 47.)

| NOTICE OF REMOVAL CALCULATION | |
|---|---|
| Description | Amount in Controversy |
| Failure to Pay Wages and Overtime | $4,406,724.00 |
| Meal Period Premiums | $2,874,140.00 |
| Rest Period Premiums | $2,874,140.00 |
| Waiting Time Penalties | $364,650.00 |
| Attorneys' Fees | $2,826,384.00 |
| **TOTAL** | **$14,131,918.00** |

Plaintiff contests Defendant's calculation on four grounds.  First Plaintiff states he does not seek waiting time penalties.  (MTR at 4-5.)  Thus, inclusion of waiting time penalties in

---

[2] The parties do not dispute the putative class is comprised of more than 100 members and the parties are minimally diverse as required by CAFA.  (See Notice of Removal ¶¶ 8-13; see also MTR at 4-12.)

Defendant's amount in controversy calculation is improper.³ (Id.) Second, Plaintiff argues the methodology used by Defendant to calculate the amounts in controversy for his unpaid overtime and missed meal and rest break periods are unsound. (Id. at 5-8.) Plaintiff takes issue with Defendant's claim that the putative class worked 1,005 days, asserting that Defendant fails to either explain how this figure was arrived at or support it with evidence. (Id. at 5-6.) Plaintiff also takes issue with the average hourly rates of pay, which he notes are not explained. (Id. at 7.) Plaintiff further notes potential errors in the time period used by Defendant—three instead of four years—and number of potential class members. (Id. at 7-8.) Third, Plaintiff asserts Defendant assumed 20% violation rate is speculative, unreasonable, and unsupported by the appropriate summary judgment type evidence. (Id. at 8-11.) Finally, Plaintiff contends Defendant's estimate of attorneys' fees, which have not yet been incurred, must be rejected. (Id. at 11-12.)

In its Opposition, Defendant maintains that its calculations establish that the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA. (See generally Opp'n.) Defendant contends its removal of the action was based on conservative, good faith estimates and the allegations of Plaintiff's Complaint. (Id. at 3, 4-6.) Defendant notes that the Complaint does not specify or otherwise limit the violations alleged. (Id. at 5.) Instead, Defendant claims that Plaintiff's own allegations implicate a 100% violation rate. (Id.) Specifically, Defendant notes that Plaintiff alleges it engaged in "a systematic scheme of wage abuse" "at all material times"—allegations which, without evidence from Plaintiff, are not inconsistent with a 100% violation rate. (Id.) Thus, Defendant concludes its assumed violation rate of 20% is conservative, and more than reasonable under current law. (Id. at 6.) Defendant then argues both its overtime and meal and rest break calculations are reasonable and supported. (Id. at 6-10, 10-13.) Defendant also provides a more detailed explanation of its calculations. (Id. at 8-10, 12-13.) Notably however, Defendant adjusts its calculations of the rest break violations, assuming two missed rest periods per week rather than one missed period per week as it did in the NOR. (Id. at 12-13.)

Next, Defendant notes that while not calculated for purposes of removal or to oppose Plaintiff's MTR, Plaintiff's other claims would increase the amount in controversy beyond CAFA's $5,000,000 jurisdictional minimum. (Id. at 13-14.) In addition to the damages Plaintiff seeks for unspecified unpaid business expenses, Plaintiff also seeks injunctive relief to ensure Defendant's compliance with the California Labor Code. (Id. at 13.) While the costs of either are unknown, Defendant maintains such costs would only further increase the amount in controversy. (Id. at 14.) Finally, Defendant maintains that its inclusion of attorneys' fees is "appropriate and well established." (Id. at 14-15.) Relying on its revised calculations, Defendant concludes that the Complaint puts at least $14,720,263.75 in controversy. (Id. at 15.)

---

³ While Defendant does not address the issue of waiting time penalties in its Opposition, waiting time penalties are not included in its second calculation. As a result, the Court does not address the propriety of the inclusion of such penalties in Defendant's original calculation.

| OPPOSITION CALCULATION | |
|---|---|
| Description | Amount in Controversy |
| Failure to Pay Wages and Overtime | $3,926,236.00 |
| Meal Period Premiums | $2,616,659.00 |
| Rest Period Premiums | $5,233,316.00 |
| Waiting Time Penalties | $0 |
| Attorneys' Fees | $2,944,052.75 |
| **TOTAL** | **$14,720,263.75** |

Plaintiff responds by noting additional deficiencies with Defendant's calculations and reiterating some of its original arguments. (See generally Reply.) As to deficiencies, Plaintiff points out that Defendant adjusts its calculations without addressing such adjustments, making significant changes "surreptitiously." (Id. at 1.) Plaintiff maintains Defendant has failed to provide sufficient summary judgment type evidence in support of its calculations and asserts that the second declaration by David Beegle, remains deficient. (Id. at 2-5.) Plaintiff also maintains that Defendant's assumed violation rate is unreasonable in light of the allegations in the Complaint and stresses that its assumptions are far less conservative than other cases in which a court has disapproved. (Id. at 5-10.) Finally, Plaintiff reiterates its position that attorneys' fees which have yet to be incurred cannot be included for purposes of calculating the amount in controversy. (Id. at 10-11.)

## B. Analysis

When, as here, a defendant's asserted amount in controversy is challenged by a motion to remand, the Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence. While "[t]here is limited appellate guidance on how district courts should interpret the evidence presented by the parties," (Salcido v. Evolution Fresh, Inc., No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *4 (C.D. Cal. Jan 6, 2016)), "[w]hen a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable." Ibarra, 775 F.3d at 1199 (stating assumptions "cannot be pulled from thin air but need some reasonable ground underlying them"). Thus, the resolution of this MTR requires the Court to determine whether Defendant's calculations are sufficiently supported by evidence, or are otherwise based on reasonable assumptions derived from the allegations of the Complaint. Those assumptions include the following: (1) the putative class worked the equivalent of 1,005 work days during the relevant period; (2) 20% violation rate for the overtime portion of Plaintiff's unpaid wage claim, or 201 days in which the putative class was not paid for one hour of overtime work; (3) 20% violation rate for Plaintiff's meal period claim, or 201 days in which the putative class was not paid for a missed meal period; (4) 20% violation rate for Plaintiff's rest break claim, or 201 days in which the putative class was not paid for missed rest breaks (two rest breaks per day); and (5) the average hourly rate of weekly paid employees was $13.65 and $22.95 for employees paid semi-

monthly.  (See generally Opp'n.)  For purposes of the analysis that follows, the Court relies on the amount in controversy as calculated in Defendant's Opposition.

The Court begins its analysis of Defendant's calculation of the amount in controversy with a review of the evidence submitted.  To support its calculation of the amount in controversy, Defendant submits the declarations of David Beegle[4] and Michelle M. Wolfe.

In his declaration, Beegle represents that he is the Director of Payroll and Compensation for Defendant.  (Beegle Decl. #2 ¶ 1.)  Beegle states that in this position he has access to, is authorized to review, and is familiar with certain employee-related information, including payroll records and company employment history for each employee.  (Id. ¶¶ 3-4.)  Beegle states he accesses this data in the regular course of business activities.  (Id. ¶¶ 3-4.)  Beegle then describes the queries made to identify employees that are potential members of the putative class, the average hourly rate of pay for the potential class members, their schedule of pay—weekly or semi-monthly, and such employees' overtime rate of pay.  (Id. ¶ 5.)  Specifically, Beegle represents that Defendant employed 858 hourly-paid non-exempt workers throughout California between April 21, 2013 and April 21, 2017.  (Id. ¶ 5.a.)  Of those, 604 were paid weekly, 208 employees were paid semi-monthly, and 35 were received both weekly and semi-monthly pay.  (Id. ¶ 5.b-c.)  The average hourly rate of pay for Defendant's weekly paid employees is approximately $13.65 and approximately $22.95 for semi-monthly paid employees.  (Id. ¶ 5.f.)  The overtime wage for these employees is $20.48 per hour and $34.43 per hour respectively.  (Id. ¶ 5.g.)

The declaration of Wolfe describes how she, as Defendant's Counsel, calculated the amount in controversy in the Opposition.  (See generally Wolfe Decl.)  According to Wolfe, she reviewed the calendars from April 21, 2013 through April 22, 2017, excluded all Saturdays, Sundays, and public holidays, and determined that there were a total of 1,005 work days in that period.[5]  (Id. ¶ 4.)  Wolfe verified her calculations with an online tool.  (Id. ¶ 5.)  Wolfe then used the figures presented in the declaration by Beegle to make calculations concerning unpaid overtime, (id. ¶¶ 12-15), missed meal and rest breaks, (id. ¶¶ 16-18), and attorneys' fees.  (Id. ¶ 11.)

Next, the Court turns to the allegations of the Complaint.  There, Plaintiff alleges Defendant "engaged in a uniform policy and systematic scheme of wage abuse against [its] hourly-paid or non-exempt employees within the state of California.  This scheme involved, inter

---

[4] Defendant submits two declarations by David Beegle.  The first declaration (Beegle Decl. #1) was filed in support of the NOR, while the second declaration (Beegle Decl. #2) was filed in support of the Opposition.  For purposes of its analysis, the Court relies only on the second declaration by Beegle, which is referred to as "the declaration of Beegle" or "the second declaration by Beegle."

[5] Plaintiff attacks the declaration of Beegle as insufficient because it does not reference or provide any support for Defendant's use of the work day figure in all of its calculations.  (Reply at 4-5.)  While this is true, the Court notes that the declaration of Wolfe does.

alia, failing to pay them for all hours worked, missed meal periods and rest breaks in violation of California law." (Compl. ¶ 25.) Plaintiff claims that "at all material times set forth herein," Plaintiff and the putative class were required to work more than eight hours in a day and/or forty hours in a week without overtime compensation. (Id. ¶ 37.) Plaintiff also claims that "at all material times set forth herein" Defendant did not provide requisite meal and rest periods, pay all wages owed during employment and upon termination, provide complete or accurate wage statements and complete or accurate payroll records, and reimburse necessary business-related expenses incurred. (Id. ¶¶ 38-45.)

The Court finds the language of the Complaint to be very general, although it does shed some light on the consistency of the potential violations. As stated above, Plaintiff alleges a "uniform policy and systematic scheme of wage abuse." (Compl. ¶ 25.) Such language permissibly and reasonably suggests a 100% violation rate. Taking these allegations as true, Defendant has an unlawful policy which is uniform in nature, i.e. an unlawful policy that is applied each time overtime is worked, or a meal or rest period is missed. See e.g., Salcido, 2016 WL 79381, at *5 ("Indeed, a uniform policy is 'characterized by a lack of variation; identical or consistent.'"); see also Mejia v. DHL Express (USA), Inc., No. CV 15-890-GHK (JCx), 2015 WL 2452755, at * 4 (C.D. Cal. May 21, 2015) ("Unlike in Ibarra, Plaintiff does not allege that there was a 'pattern and practice' or that the lead plaintiff experienced violations only on 'multiple' occasions. Instead, Plaintiff alleges that Defendant 'adopted and maintained uniform policies, practices and procedures' . . . It is not unreasonable to assume that when a company has unlawful polices and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those polices are applied.") (internal citations omitted). However, the Complaint does not offer much guidance on the extent of the violations allegedly suffered by Plaintiff or the putative class. As Plaintiff notes in his Reply, he alleges only that Defendant failed to appropriately compensate him <u>when</u> a meal or rest period was missed. (Reply at 7; Compl. ¶¶ 28-29.) Plaintiff does not allege how often that—or the other violations alleged—occurred.

With this in mind, the Court examines Defendant's method of calculation. In this case, Defendant relied on "current and historical electronic employment data and previous electronic payroll and human resources systems" to approximate the number of employees who may be members of the putative class, their average hourly rates of pay, and their overtime rates of pay. (Beegle Decl. #2 ¶ 4.) Next, Defendant determined that there were 1,005 workdays during the proposed class period and assumed that the violations alleged occurred on 20% of those days—or 201 days—for all members of the putative class. (Wolfe Decl. ¶¶ 13, 16-17.) Defendant then calculated the damages for Plaintiff's overtime and missed meal and rest period claims. For the overtime claim, Defendant assumes each member of the putative class was not paid for one hour of overtime on each of the 201 days. As to the meal period claim, Defendant assumes every putative class member missed one meal period on each of the 201 days, while Defendant assumes each putative class member missed two rest periods on each of the 201 days for the rest period claim.

Whether these estimates pass muster depends on the whether they are based on a chain of reasoning supported by reasonable assumptions. Ibarra, 775 F.3d at 1199. Defendant argues its assumptions underlying the calculations are reasonable based on the allegations of the Complaint. (See generally Opp'n.) Defendant maintains it conservatively estimated only a 20% violation rate for its calculations because the Complaint supports a 100% violation rate. (Opp'n at 5-13.) While the Court agrees that the language of the Complaint implies a 100% violation rate, it implies that only as to the occasions on which a putative class member worked overtime or missed a meal or rest period. Because the Complaint does not make any allegations as to the prevalence of the violations, it is Defendant's burden to produce summary judgment type evidence in support of its calculation regarding the frequency of the violations.

"Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." Duberry v. J. Crew Grp., Inc., No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing Ibarra, 775 F.3d at 1199). While a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations," Salcido v. Evolution Fresh, Inc., No. 2:14-CV-09223-SVW-PLA, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016), "a defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202-09 (9th Cir. 2015)). In this case, Defendant neglects its evidentiary burden. Defendant does not submit any evidence to make its assumption more credible, for instance, the number of days actually worked by the putative class during the class period or an extrapolation of the number of overtime hours worked during the class period. Instead, the evidence submitted only provides the Court with the number of employees that may constitute the putative class, their average wages, and the number of days in the proposed class period.

When a plaintiff contests the removal of an action under CAFA, the Court must test CAFA's requirements "by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. Here, Defendant's assumptions are not reasonably supported by the allegations of the Complaint or appropriate, summary judgment type evidence. As a result, Defendant's estimate of the amount in controversy does not provide this Court with jurisdiction over this matter. The Court thus GRANTS the Motion to Remand and REMANDS the action to the Superior Court for San Bernardino County.

### III. MOTION TO STRIKE

In light of the Court's decision to remand this action, the Court DENIES the Motion to Strike as moot.

//

## IV. CONCLUSION

For the foregoing reasons the Motion to Strike is GRANTED and this action is REMANDED to the Superior Court for San Bernardino County. Accordingly, the Motion to Strike is DENIED as MOOT and the hearing on August 14, 2017 is VACATED.

**IT IS SO ORDERED.**